JAMES GORMAN *vs.* ISAAC F. WOODBURY & another.

Suffolk.    March 10, 1899. — April 1, 1899.

Present: HOLMES, KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Action.*

In an action, both at common law and under the employers' liability act, St. 1887, c. 270, for personal injuries, the evidence tended to show that the defendant was engaged in excavating for a cellar; that the bank of earth to be excavated comprised several acres, and the work required a large force of men, and was in charge of a superintendent; that the bank was frozen to a depth of several inches; that the frozen part was loosened by driving wedges into it, and allowed to fall; that a large number of men, including the plaintiff, were employed in shovelling the earth and placing it in carts to be carried away; that this work proceeded while the frozen part was being forced off; that it was customary for the men driving the wedges to notify the men below when a portion of the frozen earth was about to fall; that the plaintiff was injured by the fall of such a frozen mass of earth; and that no warning was given to him by the men driving the wedges or any other person. *Held,* that the evidence was insufficient to warrant a finding of negligence on the part of the defendant or of his superintendent.

TORT, for personal injuries occasioned to the plaintiff by the fall of a quantity of earth and gravel which he was engaged in excavating, while in the employ of the defendants. The declaration contained counts at common law, alleging negligence of the defendants, and counts under the employers' liability act, St. 1887, c. 270, alleging negligence of the defendants' superintendent. Trial in the Superior Court, before *Blodgett,* J., who allowed a bill of exceptions, in substance as follows.

The evidence showed that the defendants were excavating the cellar of the Union Station on Federal Street in Boston, in February, 1897 ; that the work had progressed so that on the side where the accident to the plaintiff occurred the excavation had reached the depth of nine or ten feet, and had formed a wall or bank of that depth about seventy-five feet long; that along the top of that bank the ground was frozen to a thickness of twelve to twenty inches; that the soft earth below this frozen crust was dug out and loaded into carts, and from time to time the frozen crust was broken off by driving wedges into it; that the custom was to keep the men loading the carts at their work

all the time the wedging was going on, and the men doing that work usually gave notice to the men below by saying, " Look out below," when the frozen crust was about to fall; that no warning of any kind was given to the plaintiff of the fall of the frozen crust which injured him, because it went off so suddenly and unexpectedly that the men wedging it off could not give a warning; and that one O'Brien was the superintendent over this work and the men, whose sole or principal duty was that of superintendence.

The plaintiff testified, in substance, that he was a common laborer, about forty-six years old; that on February 1, 1897, he was working for the defendants, picking and shovelling to load teams in the cellar of the Union Station, opposite Essex Street in Boston; that there was a line of teams, two-horse tip-carts, backed up to the bank, which was about ten feet high, so that their tail ends were three or four feet from the bank, and placed about two feet apart; that he was engaged in loading one of these teams, and was about four feet from the bank on the off side of the tail end of the cart, having in his hands a lump of dirt weighing about one hundred pounds, and intending to throw it over the side into the cart, when the frozen bank hanging overhead came down upon him and caused the injuries complained of; that he had no knowledge of what was going on at the top of the bank; that he did not know just before the accident that men were engaged there in wedging off the bank; that he was obliged to keep closely to his work, and if he looked around or stopped from his work he would be discharged by the superintendent; that he had been at work in that cellar about a month before the accident; that from where he stood he could see men on the bank, but could not see what they were doing; that his height was about five and a half feet; that when from time to time along this bank the frozen earth was wedged off, there used to be this notice given, " Look out below"; that at the time when this bank fell no such notice was given, nor any signal or warning; that when the bank came down upon him his back was turned toward the bank; and that he never received any instructions from the superintendent with respect to looking out for the bank.

On cross-examination, the plaintiff testified, in substance, that

from the previous December to the day of the accident he had been at work digging, picking, and filling carts at this bank; that during this time parts of the frozen bank were thrown down, and the men on the bank who wedged it off always warned him, except in this instance; that he expected them to warn him; that O'Brien had a hundred men under his charge scattered over this cellar and bank, which covered a number of acres; that on the same day men on the bank were cutting it on the other side of him, and the bank had fallen there during that day; that he expected the frozen bank over him would come some time, but he did not know what time it would come, because it had been dug under some distance; that he was not paying any attention to the bank, and had not been during his work there; that he and all the workmen understood that the rule was that they should be notified by the men on top of the bank when it would break down; that there was no other way to notify them; and that the lump of earth weighing about one hundred pounds which he was lifting into the cart at the time of his injury was frozen, and was a piece thrown down some time before.

Michael Murphy, called as a witness by the plaintiff, testified that he was a laborer, and in February, 1897, was working for the defendants at the Union Station on Federal Street; that at the time of the accident he and another man were upon the bank opposite where the plaintiff was working below, working with large iron wedges, about twenty inches to two feet thick, driving the wedges down into the bank; that the bank was dug underneath about three or three and a half feet; that they first drove the two wedges in the middle of the bank about four feet from the outer edge, and then drove one wedge on one end and another wedge on the other end, each about two feet from the edge of the bank, and standing about two feet back from those wedges he and the other man each struck the wedges, and the bank gave way before they knew anything about it, and broke down; that O'Brien, the superintendent, directed them to do this work; that on the side where the witness was working the bank was about seventy-five feet long; that there was a string of carts in the cellar nine or ten feet below this bank; that the plaintiff was working underneath where he was, shovelling into

one of the carts, opposite the widest part of the bank; that the frozen earth which fell upon the plaintiff weighed about a ton; that he never received any instructions from the superintendent respecting the giving of any notice to the men below; that the only direction from the superintendent was to go up there and drive the wedges; that he and the other man were the only men doing that work upon the bank; and that at the time this bank fell no outcry or notice was given to the men below by himself or the other man.

On cross-examination, the witness testified that he had been working at this place four or five weeks, sometimes on the bank and sometimes digging below; that the excavation covered a large territory, the section where he was working being about seventy-five feet long, which was one section; that O'Brien had charge of at least fifty men, and was always in a great hurry to have the excavation done; that the earth underneath the frozen part was soft, easy digging; that the frozen part detached by these wedges put into it was thrown down to be put into teams; that when he was at work upon the top of the bank on the day of the accident he knew that they were breaking off the bank for the purpose of having it fall down to be put into the carts, that men were beneath digging, and that when they detached a part of this frozen mass and it fell it would go down where men were digging and filling the carts; that there was nobody there except himself and the other man to give any signal when the bank was to go off and fall among the workmen, and nobody gave him any instructions about it; that he very often heard warnings given whenever the men who were breaking down the bank noticed that it was going; that when the bank started at the time of the accident he did not say anything, because the bank came down before they knew anything at all about it; that when he was hitting the wedges he was standing about four and a half feet from the edge of the frozen mass; that the accident happened about half past two o'clock; that he had been working all the previous part of the day on this bank, breaking off parts of it from time to time; that several other men besides the plaintiff were loading teams there, backed up about three feet from the bank; that during that day they did not break away a great many pieces, because they were hard to

break; and that they might be three hours at one bank before they broke it down.

On re-direct examination, the witness testified that the breaking down of the bank was not going on all the time at one place, but would be at one place at one time and at another place at another time; that it might be once a day or three times a day in the same place, according to the progress of the undermining by picking and shovelling at any place along that bank; that on the day of the accident he was engaged about an hour in wedging off the frozen earth which fell down; and that the superintendent, on the day of the accident, directed him to take a sledge and a couple of wedges, and go up on the bank breaking down the frost wherever there was need of breaking it down, and that they followed that direction.

Dudley Joyce, called as a witness by the plaintiff, testified that he was a laborer, and at the time of the accident was alongside of the plaintiff, loading the same team; that he was a little farther from the bank than the plaintiff was; that there was no notice of any kind of the coming down of this bank; that the bank that came down was a piece three feet wide and eight or nine feet long, and when broken up filled a double team full; and that he never received from O'Brien any instructions respecting what he should do as to looking out for the bank.

On cross-examination, the witness testified that during the time that one team was going out and another was coming in, which would take a minute or two, if he stood still he would be sent to the office and turned off, and while waiting for a team he would take a pick and go to picking; that everybody was bound to keep at work; that he understood that he was to be warned when the bank came down; that he understood that by the direction of O'Brien the men would give warning when they broke away the bank; that when this mass of material came down nobody called out at all; and that other pieces of the bank had fallen where he was at work that day.

At the close of the plaintiff's evidence, the judge ruled that he could not recover, and directed the jury to return a verdict for the defendants; and the plaintiff alleged exceptions.

*E. O. Shepard*, for the plaintiff.

*C. J. Noyes*, for the defendants.

HAMMOND, J.   The negligence, if any there was, was not that of the superintendent O'Brien, but of Murphy and his companion, who were at work driving wedges into the bank. These latter were fellow servants of the plaintiff, and, there being no claim that they were unsuitable persons for that work, the defendants are not answerable to the plaintiff for their negligence, either at common law or under the statute.  *Gouin* v. *Wampanoag Mills*, 172 Mass. 222.　　　　　　*Exceptions overruled.*